Gustavo Magaña (SBN 305970)
The Law Office of Gustavo Magaña
4701 Patrick Henry Dr. Bldg 16 Suite 15F
Santa Clara, CA 95054
T: (408) 430-0411
F: (800) 650-9326
E: Gmaganaesq@gmail.com

Attorney for Plaintiff
Edgar Sanchez

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Jose Division)

| | |
|---|---|
| EDGAR SANCHEZ,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SAN JOSE, CHRISTOPHER WEBER, in his individual and official capacity, EDGARDO GARCIA in his supervisory capacity, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR VIOLATION<br>OF CIVIL RIGHTS<br><br>JURY TRIAL DEMANDED |

**NATURE OF THE ACTION**

1.     This case arises from the San Jose Police Department's unlawful arrest of Edgar

Sanchez. During the late afternoon on 10/21/2019, Mr. Sanchez was a passenger of a vehicle

that had pulled over due to mechanical issues, and that was at a complete stop.

2.     While Mr. Sanchez and the driver were waiting for the engine to cool down, San Jose Police Officer Christopher Weber and his Officer partner, whose name is unknown at this time, pulled over near the vehicle containing Edgar Sanchez near the intersection of Biscayne Way and Cliffwood Dr. in San Jose, CA.

3.     Officer Weber and his partner then approached Mr. Sanchez and the vehicle's driver, who were seated firmly within the vehicle.

4.     Further, the officers began to speak to Edgar Sanchez aggressively and condescendingly while asking several questions.

5.     During the encounter, Officer Weber and his partner became increasingly confrontational, especially after Mr. Sanchez attempted to inquire about the probable cause of the interrogation and requests to search the vehicle and his person.

6.     After which, Officer Weber and his partner used excessive force by pushing and kicking Mr. Sanchez in an attempt to force him on the ground even after Mr. Sanchez informed them of his disability.

7.     Officer Weber and his partner ignored his request for reasonable accommodations.

8.     After Officer Weber and his partner used excessive force, they falsely arrested Mr. Sanchez and charged him with resisting arrest.

9.     The Santa Clara County District Attorney's Office declined to press charges against Mr. Sanchez arising from the aforementioned arrest.

10.     Mr. Sanchez now seeks damages for the violations of his rights under the Fourth Amendment to the United States Constitution, the California Constitution, the Americans with Disabilities Act and State law.

**JURISDICTION**

11.    The claims alleged herein arise pursuant to 42 U.S.C. § 1983 and the Fourth

Amendment to the United States Constitution.

12.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and

1367.

**VENUE**

13.    Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(2)

because the unlawful acts, practices, and omissions giving rise to the claims brought by

Plaintiff occurred in the County of Santa Clara, which is within this judicial district.

14.    On April 1, 2020, Mr. Sanchez timely filed an administrative tort claim with the City of

San Jose. Subsequently, the City of San Jose issued a notice rejecting his claims on April 28,

2020. Mr. Sanchez has exhausted all available administrative remedies. Cal. Gov't. Code §§

913, 945.6(a)(1).

**PARTIES**

15.    Plaintiff Mr. Sanchez is a resident of the City of San Jose.

16.    Defendant CITY of San Jose (hereinafter "CITY") is a political subdivision organized

under the laws of California and a proper defendant in this action as to Mr. Sanchez's

claims made pursuant to the California Tort Claims Act, Cal. Gov't Code §§ 810-996. The

Defendant CITY was at all relevant times the employer of Defendant CHRISTOPHER

WEBER. The San Jose Police Department is a department of the Defendant CITY. Upon

information and belief, the CITY, through the San Jose Police Department, maintains an

unlawful policy, custom, or practice of performing false arrests, unreasonable and warrantless

searches, and seizures, using excessive force, and failing to accommodate individuals with

disabilities. This unlawful policy, custom, or practice is reinforced by the San Jose Police

Department's supervision and, on information and belief, through its training.

17.     At all times mentioned herein, Defendant CHRISTOPHER WEBER (hereinafter

"WEBER") was employed as an officer for Defendant CITY.  Defendant WEBER is sued

individually and as a public safety officer for Defendant CITY.  By engaging in the conduct

described below, Defendant WEBER acted under the color of law and in the course and scope

of his employment for Defendant CITY.  By engaging in the conduct described here,

Defendant WEBER exceeded the authority vested in him as an officer under the United States

Constitution and as an employee of the CITY.

18.     At all times mentioned herein, Defendant Chief EDGARDO GARCIA (hereinafter

GARCIA) was employed as the Chief of the San Jose Police Department, the highest position

in the San Jose Police Department. As Chief, Defendant GARCIA is and was responsible for

the hiring, screening, training, retention, supervision, discipline, counseling, and control of all

San Jose Police Department employees and/or agents and DOES 1-10. Defendant GARCIA is

and was charged by law with the administration of the San Jose Police Department's policies

for its safety officers. Defendant GARCIA also is and was responsible for the promulgation of

the policies and procedures and/or allowances of the practices/customs pursuant to which the

acts of the San Jose Police Department's alleged herein were committed. Defendant GARCIA

is sued in his supervisory and official capacities.

19.     Defendant CITY is liable for the Plaintiff's injuries under California law and under the

doctrine of respondeat superior. Liability under California law for public entities and public

employees is based upon California Government Code §§815.2, 820, and 820.8.

## STATEMENT OF FACTS

20.     On October 21, 2019, Mr. Sanchez was a passenger in a parked vehicle that had pulled

over due to the engine overheating.

21.     Mr. Sanchez was seated in the passenger seat of the vehicle when Defendant WEBER

and his DOE Officer partner stopped by the vehicle carrying Mr. Sanchez and began

interrogating him for an unknown reason.

22.     Defendant WEBER and his DOE Officer partner aggressively and condescendingly

questioned Mr. Sanchez and demanded his identification, demanded the right to search the

vehicle, demanded the right to search Mr. Sanchez's personal belongings, and person.

23.     During this period, Mr. Sanchez repeatedly asked the Defendant Officers why they

required this information and why they allegedly needed to search the vehicle, his property, or

his person.

24.     The Defendant Officers refused to provide actual answers as to what probable cause, if

any they had to demand such concessions to invasive searches.

25.     Further, Defendant Officers became increasingly aggressive when Mr. Sanchez invoked

his rights against unreasonable searches and seizures and ordered him to exit the vehicle.

26.     Once outside of the vehicle, Defendant WEBER ordered Mr. Sanchez to sit on the

ground. Mr. Sanchez voiced objection regarding the continuing unreasonable search and

seizure and thereafter informed the Defendant Officers regarding his disability wherein he

suffers from seizures.

27.     Additionally, Mr. Sanchez verbally and directly informed the Defendant Officers that

he had just suffered a seizure the previous day. Therefore his body and legs were very stiff

and could not move easily and pleaded for a reasonable accommodation and time to sit down slowly.

28.    Defendant WEBER and his DOE Officer partner acknowledged Mr. Sanchez's disability and became more enraged at the request for a reasonable accommodation. Soon thereafter, DEFENDANT WEBER and his DOE Officer partner began to push down on Mr. Sanchez violently and kick his legs to crumple his body to the floor forcefully and against his will.

29.    During this time, Mr. Sanchez repeatedly reminded the Defendant Officers about his disability and re-requested reasonable accommodations, which were expressly denied.

30.    After this intense period of excessive force, Defendant WEBER and his DOE Officer partner arrested Mr. Sanchez and threw him into the back of a patrol vehicle horizontally since Mr. Sanchez's body was still extremely stiff.

31.    Additionally, after Mr. Sanchez was thrown into the back of the vehicle, Defendant WEBER and his DOE Officer partner slammed the patrol car door on Mr. Sanchez's head, causing him injury and pain.

32.    Mr. Sanchez was then taken into jail for processing and charged with PC 148(a)(1) resisting/delaying officers.

33.    The Santa Clara County District Attorney's Office has declined to file charges arising from the subject arrest.

34.    DEFENDANTS thus harmed Mr. Sanchez. They violated his exercise and enjoyment of core constitutional rights, humiliated him, used excessive force, caused the loss of his liberty, refused and failed to provide him with reasonable accommodations for his disability, and caused him to suffer physical injury and emotional distress.

35.    At no time during the subject incident, did Mr. Sanchez ever strike or attempt to strike Defendant WEBER or his DOE Officer partner, or any other CITY officer in any way.

## DAMAGES

36.    As a proximate result of Defendants' conduct, Mr. Sanchez suffered pain and physical injuries, including pain to his legs and head as well as soreness.

37.    As a further proximate result of Defendants' conduct, Mr. Sanchez suffered severe emotional distress, humiliation, embarrassment, and loss of his sense of security, dignity, and pride.

38.    The conduct of the individual Defendants was malicious, sadistic, wanton, and oppressive.  Mr. Sanchez is therefore entitled to an award of punitive damages against the Defendants.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Fourth Amendment (42 U.S.C. §1983)**
**Against Defendants WEBER, GARCIA, and DOES 1-10**

39.)    The foregoing allegations are realleged and incorporated herein.

40.)    Defendant WEBER and his DOE Officer partner caused Plaintiff to be detained as they attempted to arrest Mr. Sanchez in violation of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Mr. Sanchez under the Fourth Amendment of the United States Constitution and applied to state actors by the Fourteenth Amendment.

41.) As a result of the conduct of Defendants WEBER and DOE 1, they are liable for Plaintiff's injuries because they were integral participants to the violations of Mr. Sanchez's rights.

42.) The Plaintiff was detained without reasonable suspicion by Defendants as they attempted to arrest Mr. Sanchez without probable cause.

43.) Further, Defendant GARCIA in his supervisory capacity, while acting under color of law, knew, or reasonably should have known, that his subordinates WEBER and DOES 1-10 were engaging in these acts and their conduct would deprive the plaintiff of these rights.

44.) Additionally, Defendant GARCIA, in his supervisory capacity, failed to act to prevent his subordinates from engaging in such conduct.

45.) The conduct of Defendants WEBER and DOES 1-10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and thus warrants the imposition of exemplary and punitive damages as to Defendants WEBER and DOES 1-10

46.) Accordingly, Defendants WEBER and DOES 1-10 are each liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. §1983.

47.) Plaintiff also seeks attorney fees under this claim.

## SECOND CLAIM FOR RELIEF

**False Arrest/False Imprisonment/Violation of Cal Cost. Art I, section 13**

**(California Tort Claims Act, Cal. Gov't Code §§815.2, 820)**

**(Cal. Const. Art. I section 13)**

**Against Defendants WEBER, GARCIA and DOES 1-10**

48.) The foregoing allegations are realleged and incorporated herein.

49.)   Defendant CITY, through Defendants WEBER and DOES 1-10, inflicted personal injury on Mr. Sanchez by subjecting him to false arrest and imprisonment and unreasonable seizure.

50.)   Defendants arrested Mr. Sanchez for allegedly violating California Penal Code §148(a)(1), based on his initial refusal to submit to an unreasonable search and seizure without a valid warrant or probable cause and for asking for clarification as to why the Defendants WEBER and DOES 1-10 wanted to search his person and personal belongings. Defendants WEBER and DOES 1-10 deprived Mr. Sanchez of his freedom by subjecting him to unreasonable detention, and by arresting him without a warrant and without reasonable or probable cause, all without his consent.

51.)  Further, Defendant GARCIA in his supervisory capacity, while acting under color of law, knew, or reasonably should have known, that his subordinates GARCIA and DOES 1-10 were engaging in these acts and their conduct would deprive the plaintiff of these rights.

52.) Additionally, Defendant GARCIA, in his supervisory capacity, failed to act to prevent his subordinates from engaging in such conduct.

53.)  As a result of Defendants' actions, Mr. Sanchez was harmed, and each of the Defendants' actions were a substantial factor in causing that harm.

### THIRD CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**

**By Plaintiff against Defendants WEBER, GARCIA and DOES 1-10**

54.)   The foregoing allegations are realleged and incorporated herein.

55.)   Defendants WEBER and DOES 1-10 unreasonable use of excessive force deprived Mr. Sanchez of his right to be secure in his persons and property against unreasonable searches

and seizures as guaranteed to the Plaintiff under the Fourth Amendment to the United States

Constitution and applied to state actors by the Fourteenth Amendment.

56.)   As a result, Plaintiff suffered physical pain and emotional distress.

57.)   As a result of the conduct of Defendants WEBER and DOES 1-10, they are liable for

Mr. Sanchez's injuries because they were integral participants in the excessive force.

58.)   The use of excessive force was unreasonable under the circumstances. Thus,

Defendants WEBER and DOES 1-10 actions deprived Mr. Sanchez of his right to be free

from unreasonable searches and seizures under the Fourth Amendment and applied to state

actors by the Fourteenth Amendment.

59.)   Further, Defendant GARCIA in his supervisory capacity, while acting under color of

law, knew, or reasonably should have known, that his subordinates WEBER and DOES 1-10

were engaging in these acts and their conduct would deprive the plaintiff of these rights.

60.)   Additionally, Defendant GARCIA, in his supervisory capacity, failed to act to prevent

his subordinates from engaging in such conduct.

61.)   The conduct of Defendants WEBER and DOES 1-10 was willful, wanton, malicious,

and done with reckless disregard for the rights and safety of the Plaintiff and therefore warrants

the imposition of exemplary and punitive damages as to Defendants WEBER and DOES 1-10.

62.)   Plaintiff also seeks attorney fees under this claim.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. §1983)**

**By Plaintiff Against Defendant CITY**

63.)   The foregoing allegations are realleged and incorporated herein.

64.)   While acting under the color of state law and within the course and scope of their employment as police officers for the Defendant CITY police department, Defendants WEBER and his DOE Officer partner's use of excessive force, false arrest, and failure to provide a reasonable accommodation in violation of the Americans with Disabilities Act deprived Mr. Sanchez of his rights and liberties secured to him by the Fourth and Fourteenth Amendments, including his right to be free from unreasonable search and seizure.

65.)   Upon information and belief, Defendants WEBER and his DOE Officer partner acted pursuant to an expressly adopted official policy or longstanding practice or custom of the Defendant CITY.

66.)   Upon information and belief, Defendants WEBER and his DOE Officer partner were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with either the detention, arrest, excessive force and failure to provide reasonable accommodations based on the Plaintiff's disability.

67.)   Defendants deprived Mr. Sanchez of the rights and liberties secured to him by the Fourth Amendment to the United States Constitution, in that said Defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiff's, and of persons in their class, situation, and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

(a) Employing and retaining as police officers and other personnel, including Defendants WEBER and his DOE Officer partner, at all times material herein knew or reasonably should

have known had dangerous propensities for abusing their authority and for mistreating

citizens by failing to follow written CITY Police Department Policies;

(b) Of inadequately supervising, training, controlling, assigning, and disciplining CITY Police

Officers, and other personnel, whom Defendant CITY knew or in the exercise of reasonable

care should have known had the aforementioned propensities and character traits;

(c) By failing to adequately train officers, including Defendants WEBER and his DOE Officer

partner, and failing to institute appropriate policies, regarding the use of excessive force and

unreasonable searches and seizures; reasonable accommodations for citizens with disabilities,

and

(d) By having and maintaining an unconstitutional policy, custom, and practice of using

excessive force and failing to provide reasonable accommodations, which also is

demonstrated by inadequate training regarding these subjects. The policies, customs, and

practices of Defendant CITY were done with deliberate indifference to individuals' safety and

rights, and

(e) By failing to adequately discipline CITY police officers for the above-referenced

categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be

out of proportion to the magnitude of the misconduct, and other inadequate discipline that is

tantamount to encouraging misconduct;

(f) Announcing that officer uses of excessive force are "within policy," that were later

determined in court to be unconstitutional;

(e) Maintaining a policy of inaction and an attitude of indifference towards citizen complaints

of excessive force and false arrests, including by failing to discipline, retrain, investigate,

terminate, and recommend officers for criminal prosecution who participate in the use of false arrests, excessive force, and failure to provide reasonable accommodations.

68.)  By reason of the aforementioned policies and practices of Defendants, Plaintiff was injured and subjected to pain, suffering, and emotional distress.

69.)  Defendant CITY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated, and through actions and inactions, thereby ratified such policies. Said Defendant's also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of the Plaintiff and other individuals similarly situated.

70.)  By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant CITY and DOES 1-10 acted with an intentional, reckless, and callous disregard for the Plaintiff's health and constitutional rights. Defendants' actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

71.)   The aforementioned unconstitutional customs, practices, and policies, in addition to the ratification of the deficient customs, practices, and policies, are evidence by the number of excessive force complaints, false arrest complaints, and failure to provide reasonable accommodations since the early 2000's to the present. The following court cases and news reported incidents are examples of continued misconduct by officers working for the San Jose Police Department:

(a) In Gonzales v. City of San Jose, et al., case number 5:2019cv08195, Defendant City of San Jose and San Jose Police Officer David Lezama are sued for excessive force wherein, the suit arises from Officer Lezama becoming irate when Mr. Gonzales failed to pull over on his bike and immediately submit to his demands. Therefore, Officer Lezama rammed into Mr. Gonzales with his department vehicle causing various injuries, including a broken leg.

(b) Tony Nunez, et al. v. City of San Jose, et al., case number 5:17-cv-03860, in this case, a jury found that the officers who shot and killed decedent Anthony Nunez used excessive force and awarded a jury verdict of $2.65 million. Additionally, in this matter, Mr. Nunez suffered from a disability, and his family alleged that the San Jose Police Department failed to provide decedent Nunez with reasonable accommodations.

(c) Sanderlin v. City of San Jose, et al., case number: 5:2020cv04824, in this case, Mr. Sanderlin is suing the officers for using excessive force while he was peacefully protesting. Defendants struck Mr. Sanderlin in the groin with rubber bullets. Mr. Sanderlin's case is notable because he has previously worked with the San Jose Police Department to teach officers regarding bias.

(d) Fukijawa v. City of San Jose, et al. (2012), in this case, David Fukiajwa sued officers based on a 2011 traffic stop arrest wherein the officers used excessive force and repeatedly tased him. Thereafter, the officers charged Mr. Fukijawa with resisting arrest. The district attorney's office later dropped these charges.

(e) Paulino v. City of San Jose, et al., case number: 16-cv-02642, in this case, Eliel Paulino sued after SJPD officers pulled him over during a traffic stop and thereafter repeatedly struck him with a baton. The officers then charged Mr. Paulino with resisting arrest. The district attorney's office later dropped these charges. This civil case was later settled for $700,000.00

(f) Alemayehu v. City of San Jose, et al., case number: 5:14-cv-01738, in this case, Dawit Alemayehu sued after SJPD officers used excessive force by throwing him onto the ground and causing brain damage. Thereafter, the officers charged Mr. Alemayehu with excessive force. The district attorney's office later dropped these charges. This civil case was later settled for $525,000.00

(g)     Santa Cruz, et al, v. City of San Jose, et al., case number: 5:2020cv00351, in this case, Ms. Santa Cruz and Mr. Tukuafu are suing SJPD officers for excessive force wherein the officers tased and repeatedly struck both Plaintiff's with batons after they questioned the acts and behavior of the arresting officers. Thereafter and upon information and belief, the officers charged Ms. Santa Cruz and Mr. Tukuafu but the District Attorney's office refused to file charges.

(h) In July 2020, Guadalupe Esperanza Marin was pulled over by an SJPD Officer during a traffic stop and told to kneel on the ground. Upon information and belief from video footage, Ms. Marin was in the process of kneeling and being compliant when an SJPD Officer kicked her in the stomach and then dragged her across the floor in front of minor children in the vehicle.

 (i)  During Chief Eddie Garcia's tenure as Chief of Police and a final policy decision maker, he has made several statements regarding the use of force by SJPD officers that speak to an unconstitutional custom or policy. For example. In July 2020 after SJPD Officer Jared Yuen was filmed licking his lips in anticipation of fighting with protestors and using excessive force, Chief Garcia stated: "I will tell you, I know Jared, and he's a good kid who made a mistake who let his emotions get the better of him." Further statements involving excessive force by SJPD officers include his defense of the officers who shot and killed Anthony Nunez after a jury found the officers to have used excessive force, wherein Chief Garcia stated: "I'm disappointed with the jury's decision, I stood by my officers when it happened and I stand by them today." Finally, in 2017, several individuals with mental health issues were killed in officer-involved shootings, of

which it was argued that reasonable accommodations were not provided. In response to these shootings, Chief Garcia responded, "That 100 percent of people shot by police in San Jose this year had a mental illness is alarming."

(j) Recently released training materials presented by SJPD Sgt. And training unit instructor Chris Sciba on how to use less-lethal crowd control weapons made light of excessive force on citizens through the use of cartoon of a wooly mammoth shot in the groin, and ended with directives encouraging officers to "not hesitate" and "always win."

(k) Investigative journalist Tracey Kaplan of the East Bay Times also reported in a 5/17/2016 article regarding excessive force by the San Jose Police Department that during the period of 2011-2015, the public had made 683 excessive force complaints stemming from 362 incidents. Further, during that same period, the department failed to initiate any investigations into the use of force based on reports of fellow officers and supervisors.

72.)   Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff.

73.)   By reason of the aforementioned acts and omission of Defendants, Plaintiff suffered physical pain and emotional distress.

74.)   Accordingly, Defendants, each is liable to Plaintiff for compensatory damages under 42 U.S.C. §1983.

75.)   Plaintiff seeks attorney fees under this claim.

//

//

**FIFTH CLAIM FOR RELIEF**

**Municipal Liability – Ratification (42 U.S.C. §1983)**

**(By Plaintiff against Defendant CITY)**

76.)   The foregoing allegations are realleged and incorporated herein.

77.)   Defendant WEBER and his DOE Officer partner acted under color of law.

78.)   The acts of Defendant Weber and his DOE Officer partner deprived Plaintiff of their particular rights under the United States Constitution.

79.)   Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of Defendants WEBER and his DOE Officer Partner, ratified (or will ratify) Defendant WEBER'S and his DOE Officer partner's acts and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of (or will specifically approve of) Defendants WEBER and his DOE Officer partner's acts, which include the unlawful detention of Plaintiff and the unreasonable detention and arrest of the Plaintiff and the use of excessive force against the Plaintiff.

80.)   Upon information and belief, a final policymaker has determined (or will determine) that the acts of Defendants WEBER and his DOE Officer partner were "within policy."

81.)   Plaintiff brings this claim in his individual capacity and seeks compensatory damages, including physical injuries, pain and suffer, and emotional distress for the violation of Plaintiff's rights. The Plaintiff also seeks punitive damages and attorneys fees under this claim.

//

//

### SIXTH CLAIM FOR RELIEF

### MUNICIPAL LIABILITY-FAILURE TO TRAIN (42 U.S.C. §1983)

### (By all Plaintiffs against Defendant CITY)

82.)   The foregoing allegations are realleged and incorporated herein.

83.)   Defendant WEBER and DOE Officer Defendants acted under color of law.

84.)   The acts of Defendants WEBER and his DOE Officer partner deprived the Plaintiff of his particular rights under the United States Constitution.

85.)   The training policies of Defendant CITY were not adequate to train its officers to handle the usual and recurring situations with which they must deal.

86.) Further, the training policies of Defendant CITY were not adequate to train its officers to handle situations involving or arising from interactions with disabled citizens with which they must deal.

87.)   Defendant CITY was deliberately indifferent to the obvious consequences of its failure to train its Officers adequately. Specifically, Defendant CITY failed to adequately train its deputies with regard to deciding when it is appropriate to detain an individual, and the use of unreasonable and excessive force, and in regard to dealing with disabled citizens and providing reasonable accommodations.

88.)   The failure of Defendant CITY to provide adequate training caused the deprivation of the Plaintiff's rights by Defendants WEBER and his DOE Officer partner; that is, the Defendants failure to train is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

89.)    By reason of the aforementioned acts and omissions, Plaintiff suffered bodily injury, emotional, and mental distress. Accordingly, Defendant CITY and DOES each are liable to the Plaintiff for compensatory damages under 42 U.S.C. §1983.

90.)    The Plaintiff, in this case, seeks compensatory damages, including for physical injuries, emotional, and mental distress for the violation of the Plaintiff's rights. Plaintiff also seeks punitive damages and attorney's fees under this claim.


**SEVENTH CLAIM FOR RELIEF**

**Bane Act (Cal Civ. Code §52.1)**

**(California Tort Claims Act, Cal. Gov't Code §§815.2, 820)**

**(Against all Defendants)**

91.)    The foregoing allegations are realleged and incorporated herein.

92.)    Defendant City, through Defendants WEBER and DOES 1-10, intentionally interfered with Mr. Sanchez's exercise and enjoyment of his civil rights under the United States and California Constitutions.

93.)    Defendants intentionally interfered with Mr. Sanchez's rights under the Fourth Amendment and Article I, Sections 10 and 13 of the California Constitution, to be free from unreasonably invasive or prolonged investigatory detention in the absence of reasonable cause. Defendants used threats and coercion to prevent Mr. Sanchez from insisting on his rights, and they ultimately used excessive force and did arrest him and caused him to be jailed to retaliate against him for invoking his rights.

94.)    Defendants intentionally interfered with Mr. Sanchez's right to be free of unreasonable searches and seizures under the Fourth Amendment and asking for probable cause and further

explanation as to what was happening as the officers were acting aggressively with him. Defendants used violence and acted violently with Mr. Sanchez to prevent him from exercising and enjoying his civil rights, and they subjected him to an unreasonably invasive and prolonged investigatory detention, excessive force, arrest, and jail to retaliate against him for invoking that right.

95.)   Defendants intentionally interfered with Mr. Sanchez's right under the Fourth Amendment and Article I, Section 13 of the California Constitution, to be free from warrantless arrest without probable cause. Defendants used threats and force to effect Mr. Sanchez's unlawful arrest, and Mr. Sanchez reasonably believed that they would commit violence against him if he did not physically submit to the unlawful arrest.

96.)   Further, Defendant GARCIA in his supervisory capacity, while acting under color of law, knew, or reasonably should have known, that his subordinates WEBER and DOES 1-10 were engaging in these acts and their conduct would deprive the plaintiff of these rights.

97.)   Additionally, Defendant GARCIA, in his supervisory capacity, failed to act to prevent his subordinates from engaging in such conduct.

98.)   As a direct and proximate result of each and every Defendants' violations of California Civil Code §52.1 and the Plaintiff's rights under the United States Constitution and the laws of the Constitution of the State of California, Plaintiff was harmed, and sustained injuries and damages and the each of the Defendants conduct was a substantial factor in causing the Plaintiff's harm. Additionally, against each and every Defendant, the Plaintiff is entitled to relief as set forth above at paragraphs contained herein, including punitive damages against the Defendants in their individual capacities, including all damages and penalties allowed by California Civil Code §§52, 52.1, and California law, including costs, attorneys fees, civil

penalties, and punitive damages. Further, Defendants' violations of Plaintiff's rights as guaranteed by the California Civil Code (§52.1) entitled Plaintiff to compensatory and punitive damages, treble damages, as well as attorneys fees, all of which are provided for in the California Civil Code §§52, et seq., and are requested herein.

99.)  Since the conduct of Defendants WEBER, and DOES 1-10, inclusive, occurred in the course and scope of their employment, Defendant CITY is therefore liable to Plaintiff WEBER pursuant to respondeat superior.

## EIGHTH CLAIM FOR RELIEF

### Battery (Cal. Govt. Code §820 and California Common Law)

### (By Plaintiff against Defendant CITY, and Defendant WEBER, and DOES 1-10)

100.).  The foregoing allegations are realleged and incorporated herein.

101.).   Defendant WEBER and his DOE Officer partner, while working as officers for the San Jose Police Department, and acting within the course and scope of their duties, intentionally pushed the Plaintiff and kicked his legs in order to try to force him down onto the curb. This was done even though the Plaintiff informed Defendant WEBER and his DOE Officer partner that he suffered from seizures and had just suffered a seizure the day before, which made his body stiff and made it difficult to move quickly. As a result of the actions of Defendant WEBER and his DOE Officer partner, the Plaintiff suffered severe pain and suffering, mental, and emotional distress. Defendants WEBER and his DOE Officer partner had no legal justification for using force against the Plaintiff and said Defendants' use of force while carrying out their duties as San Jose Police Officers was an excessive and unreasonable use of force, particularly because the Plaintiff was unarmed and did not pose an immediate threat to the life of any individual, including any officer.

102.)   As a direct and proximate result of the conduct of Defendant WEBER and his DOE Officer partner as alleged above, the Plaintiff suffered extreme and severe mental anguish and pain and has been injured in mind and body.

103.). Defendant CITY is vicariously liable for the wrongful acts of Defendant WEBER and his DOE Officer partner pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

### NINTH CLAIM FOR RELIEF

**(Violation of the Americans with Disabilities Act)**

**Against Defendant City**

104.) The foregoing allegations are realleged and incorporated herein.

105.) The Americans with Disabilities Act (ADA) provides a national mandate for the elimination of discrimination against individuals with disabilities in critical areas such as employment, housing, public accommodation, education, and access to public services §12101(a)(3) and (b).

106.) Further, at all times mentioned herein, the Plaintiff was entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990. Title II, Subpart A which prohibits discrimination by any "public entity," including any state or local government, as defined by 42 USC §12131, section 201 of the ADA.

107.) Pursuant to 42 USC 12132, Section 202 of the Title II, no qualified individual with disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to

discrimination by any such entity. The Plaintiff was at all times relevant herein, a qualified individual with a disability as therein defined.

108.) Defendant CITY is a public entity, and by and through the San Jose Police Department and its officers and agents acting under color of law, provide public services.

109.) In addition, the ADA covers public "services, program, or activities," 42 U.S.C §12132, and thus the accommodation requirement encompasses acts that a public entity does.

110.)  Further, the Plaintiff directly and verbally informed the Defendants of his disability. The Defendants acknowledged the existence of the disability and yet still failed to provide a reasonable accommodation even after the Plaintiff repeatedly requested one.

111.) Additionally, Defendant WEBER and his DOE Officer Partner became more aggressive and violent with the Plaintiff after he informed them of his disability and requested a reasonable accommodation.

112.) Moreover, during the period before and during the use of excessive force by Defendant WEBER and his DOE Officer partner, the Plaintiff was not posing a direct threat to himself or others.

113.) During the scope of the detention, excessive force, and arrest, the Plaintiff never struck nor attempted to strike any officers at the scene. Additionally, the Plaintiff never attempted to flee the scene.

114.) As a direct and proximate result of the conduct of Defendant WEBER and his DOE Officer partner as alleged above, the Plaintiff suffered extreme and severe mental anguish and pain and has been injured in mind and body and suffered damages including special and general damages according to proof.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1.) Award Plaintiff general, special, and compensatory damages in an amount to be proven at trial.

2.) Award Plaintiff punitive damages against individually named Defendants, and each of them, for their extreme, outrageous conduct in complete disregard for the rights of the Plaintiff.

3.) For actual damages, civil penalties, and attorneys fees under CA civil Code §§52.1

4.) Award Plaintiff statutory damages and/or attorney's fees against all Defendants as allowed by 42. U.S.C. §1988.

5.) Grant Plaintiff such other and further relief as the Court deems just and proper.


Dated: 08/22/2020                                      Law Office of Gustavo Magaña

                                                              __/s/ Gustavo Magaña____

                                                              Attorney for Plaintiff

JURY DEMAND: Plaintiff demands a trial by jury in this matter, pursuant to FRCP 38(a).

                                                              Law Office of Gustavo Magaña

Dated: 08/22/20                                          __/s/ Gustavo Magaña____

                                                              Attorney for Plaintiff